STATE OF MAINE
KENNEBEC, SS.

UNIFIED CRIMINAL DOCKET
AUGUSTA
DOCKET NO. CR-2017-492

STATE OF MAINE

V.

**ORDER ON PENDING MOTIONS**

MATTHEW J. COLLINS

## INTRODUCTION AND PROCEDURAL HISTORY

Before the court for resolution are: (1) Defendant's Motion to Suppress dated June 16, 2017, i.e., a blood sample taken from him pursuant to a search warrant,[1] and; (2) Defendant's Motion for Sanctions dated July 6, 2017. A hearing on the motions was held on November 28, 2017 at which the court received the testimony of Maine State Trooper Klayton Peckham. The court admitted into evidence State's (Plaintiff's) Exhibits 1 and 2, and Defendant's Exhibits 2, 3, 4 and 7.

On January 20, 2017, the Defendant was charged by means of a Uniform Summons and Complaint with OUI (alcohol) (Class D). On March 13, 2017, the Defendant was charged by a long-form complaint with the offense of criminal OUI, with the aggravating factor alleged that the Defendant was tested as having a

---

[1] The only portion of the Defendant's Motion to Suppress Evidence that is the subject of this Order is the claim that the seizure of his blood by way of a search warrant issued on January 13, 2017, was without probable cause and not in compliance with the applicable Rules of Criminal Procedure, as alleged in paragraphs 2 and 3 of the motion. Other aspects of the motion to suppress were resolved by the court after hearing on June 27, 2017. In particular, paragraphs 1 and 4 of the motion were granted, and paragraph 5 of the motion was denied, for the reasons stated on the record.

BAC of .15 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath.

In February and March 2017, counsel for the Defendant made discovery requests to the District Attorney's Office seeking, among other items, the search warrant affidavit and any e-mails between the affiant (Trooper Peckham) and the Justice of the Peace who issued the warrant. On June 19, 2017, the Defendant filed his Motion to Suppress Evidence dated June 16, 2017. A testimonial hearing on that motion was conducted on June 27, 2017 at which the court received the testimony of Winthrop Police Officer Kenneth Tabor, who has been trained as a law enforcement "blood draw technician.". Officer Tabor testified concerning his taking of a sample of blood from the Defendant on January 13, 2017 at the Central Maine Medical Center in Lewiston.

During the hearing on June 27, 2017, Defense Counsel brought up the subject of his discovery requests to the District Attorney's Office, specifically the search warrant request and affidavit and the e-mails. The e-mails were sought because Trooper Peckham utilized the procedure set forth in M.R.U.Crim.P. 41C, pertaining to search warrant requests made outside the presence of the court or justice of the peace. The court ordered the State to provide Defense Counsel with the affidavit in support of the search warrant and "the e-mails between the Affiant and the Justice of the Peace by July 5, 2017." The court further ordered that a hearing on the Defendant's challenge to the search warrant would be scheduled when the e-mails had been provided in discovery.

On July 10, 2017, the Defendant filed a Motion for Sanctions dated July 6, 2017 asserting that the e-mails had not been provided by the State by July 5, 2017 as ordered by the court on June 27, 2017.

Based upon the evidence presented at the hearings on June 27, 2017 and November 28, 2017,[2] and after considering the arguments of counsel, the court makes the following findings of fact.

## FACTS

On January 13, 2017 at approximately 7:11 p.m.,[3] Trooper Klayton Peckham responded to a motor vehicle crash in Farmingdale. One male, identified as the Defendant Matthew Collins, was in the vehicle. The Trooper observed that the Defendant was slurring his speech, smelled strongly of alcohol, was disoriented and confused, had bloodshot and dilated eyes, and had apparently driven his vehicle into a ditch where it landed on its side. Trooper Peckham started the process of drafting an affidavit and request for a search warrant for a sample of the Defendant's blood.[4] He utilized the process authorized by Rule 41C, which permits the issuance of a search warrant by a court or justice of the peace when the applicant is not in the physical presence of the issuing magistrate.

After preparing the affidavit on his cruiser laptop, Trooper Peckham e-mailed it to Justice of the Peace Jennifer Bryant, Esq. This occurred at approximately 9:00 p.m. on January 13, 2017. (State's Exhibit 1). In sending the affidavit to the magistrate, Trooper Peckham recognized that the box on the form authorizing a nighttime or daytime search could not be checked off. At 9:01 p.m. he e-mailed the magistrate as follows: "I was unable to check the box but this will be for a daytime or nighttime warrant. I will check those boxes once I print off the documents." (State' Exhibit 1).

---

[2] A hearing on the Motion for Sanctions was also scheduled for November 6, 2017. The Trooper, however, was not available on that date, so the matter was continued to November 28, 2017 in order that both motions could be dealt with at that time.

[3] Trooper Peckham's affidavit in support of the search warrant indicates that he was dispatched to the scene at 6:22 p.m., and made contact with the Defendant at 7:11 p.m. *See* State's Exhibit 1.

[4] Trooper Peckham's affidavit makes it apparent that the Defendant was in no condition to perform a breath test or to give valid consent for the taking a blood sample.

The affidavit transmitted to the justice of the peace amply establishes probable cause to believe that the Defendant had operated a motor vehicle while under the influence of alcohol, and this issue will not be discussed further.[5] The affidavit, however, was not actually signed by Trooper Peckham. Rather, it states: "Subscribed and sworn to by *Trooper Klayton Peckham* before me this *13th* day of *January*, *2017*." The italicized language was hand-written in the spaces on the affidavit form. Although this issue was not addressed at the hearing, the court concludes, based on the exhibits, that the hand-writing is that of Justice of the Peace Bryant. Immediately following the attestation statement is the magistrate's signature and Bar number. (State's Exhibit 1; Defendant's Exhibit 7). On cross-examination Trooper Peckham testified that he did not "take an oath" over the phone before the justice of the peace. He was not asked any follow-up questions as to whether and how he "attested to [the] contents" of his affidavit. The form Affidavit and Request for Search Warrant contains the following statement, however: "Under oath/affirmation, the information in my statement dated 01-13-17 is true . . . ."

The justice of the peace issued the warrant at 9:13 p.m. on January 13, 2017. The warrant, as issued by the magistrate and returned to Trooper Peckham, did not have any box checked as to whether the search was: (1) a daytime warrant only, (2) a daytime or nighttime warrant, or (3) a nighttime warrant only. (Defendant's Exhibit 7; *see also* Warrant in SW-17-19 file). Nevertheless, the copy of the search warrant supplied to the District Attorney's Office by Trooper Peckham, and then provided to Defense Counsel by way of discovery, has an "X" mark in the box designating it as a "nighttime or daytime warrant." (Defendant's Exhibit 2).

---

[5] Although the Defendant's original motion asserted that there was no probable cause for the issuance of the warrant, Defense Counsel never argued that point at any time during the hearing of November 28, 2017.

4

This was consistent with the Trooper's e-mail to the justice of the peace at 9:01 p.m. on January 13, 2017.

After the justice of the peace signed the warrant and e-mailed it back to Trooper Peckham, he printed it off on his cruiser printer and drove to Central Maine Medical Center in Lewiston, where the Defendant has been taken for medical treatment. Shortly before 11:00 p.m. Officer Tabor arrived at the hospital and met Trooper Peckham. He was taken to where the Defendant was and proceeded to draw two vials of blood from him. Officer Tabor completed the paperwork for the blood kit and handed it to Trooper Peckham. Officer Tabor testified that he saw the search warrant before he drew blood from the Defendant. Trooper Peckham's inventory indicates that the warrant was executed at 11:14 p.m. on January 13, 2017. (Defendant's Exhibit 7). Trooper Peckham later delivered the blood kit to the Health and Environmental Testing Laboratory (HETL) in Augusta.

The Defendant has pointed out that there are some apparent discrepancies in the search warrant documents. In particular, on Defendant's Exhibit 2, which is a copy of the warrant provided to defense Counsel in discovery, a correction to the date of Trooper Peckham's affidavit has been made to reflect that the date was 01-13-17, followed by the initials "KCP."[6] On the copy of the search warrant contained in the court's file, however, Trooper Peckham's signature appears beneath his initials, yet he testified that he never saw the so-called "original" search warrant that was filed with the court, presumably by the issuing magistrate.[7]

---

[6] Trooper Peckham testified that he inadvertently put the Defendant's date of birth in the space for the date of his affidavit and corrected it when he realized what he had done.

[7] In point of fact, the search warrant filed with the court on February 1, 2017 is a copy, and does not contain the issuing magistrate's original signature.

In addition, the Defendant has suggested that his blood was taken prior to the issuance of the warrant. He points to the Certificates of Alcohol Analysis from the Health and Environmental Testing Laboratory. (Defendant's Exhibits 3 & 4). On those certificates, the specimen collection time is stated to be 21:14 (9:14 p.m.) on January 13, 2017, virtually the same time the warrant was issued at 9:13 p.m. (Defendant's Exhibits 2 & 7).

With respect to the Motion for Sanctions, the Defendant argues that the e-mails were not provided to him by July 5, 2017 as ordered. Trooper Peckham made a timely request for the e-mails on June 27, 2017 and the justice of peace faxed them back to the Troop D barracks that day. They may have remained at the fax machine for some period of time until Trooper Peckham retrieved them and supplied them to the District Attorney's Office. The District Attorney's Office mailed them to Defense Counsel on July 5, 2017, at least in part because of the July 3, 2017 state shutdown day and the 4th of July holiday.

Finally, the Defendant complains that some of the e-mails were/are missing. But the justice of the peace who issued the warrant represented to the District Attorney's Office that she had sent everything she possessed. (State's Exhibit 2).

## DISCUSSION

### A. Motion for Sanctions

The Defendant's Motion for Sanctions is denied. Whether there should be any sanction, and if so, what any sanctions should be, is a matter for the court's discretion. Under the circumstances of this case, the court concludes that no sanction is warranted or appropriate.

### B. Motion to Suppress Blood Sample

This case illustrates the technical difficulties that can result when a search warrant is requested, but the applicant and the magistrate are not in each other's presence. Rule 41C was designed to deal with the practical

6

reality that courts and justices of the peace may not be nearby when a law enforcement officer needs to apply for a search warrant.

Here, Trooper Peckham correctly recognized that the Defendant was not capable of performing a breath test or giving voluntary consent. The trooper immediately began the process of applying for a warrant, which is exactly what he was expected and required to do under the circumstances. Because he was using the laptop inside his cruiser, he was not able to physically sign the affidavit, nor was he able to mark the boxes on the affidavit and search warrant specifying the type of warrant he was seeking, i.e., nighttime or daytime warrant.

The Fourth Amendment to United States Constitution and Article I, section 5 of the State of Maine Constitution require that a search warrant be supported by oath or affirmation. Rule 41C(b)(1) provides: "The applicant, by telephone or other reliable electronic means, must attest to its [the affidavit's] contents, and the court or justice of the peace must acknowledge the attestation in writing on the affidavit."

In this case, Trooper Peckham, using his cruiser laptop, electronically transmitted to the justice of the peace the affidavit he had prepared, which contained the following attestation: "Under oath/affirmation, the information in my statement dated 01-13-17 is true and I have probable cause to conduct the requested search and seizure on the basis of the information contained in the preceding pages . . . ." In the court's view, Trooper Peckham's act of electronically transmitting his affidavit to the magistrate was his attestation of its contents by "reliable electronic means."

The justice of the peace - Attorney Bryant – clearly understood this because she acknowledged the attestation in writing on the affidavit by completing the jurat for Trooper Peckham and signing the affidavit. In

7

short, Trooper Peckham's electronic transmission of the affidavit by means of his cruiser laptop was tantamount to being his digital/electronic signature, and complied with the requirements of Rule 41C(b)(1).

The other alleged deficiencies in the search warrant and seizure of the Defendant's blood sample are lacking in merit.

The court cannot explain, and Trooper Peckham could not either, why only his initials appear on one copy of the search warrant, but what purports to be his signature appears on the copy in the court's file. (*Compare* Defendant's Exhibits 2 & 7). The discrepancy, however, is not material, and does not support suppression of the evidence.

The fact that Trooper Peckham marked an "X" on the warrant that was returned to him by the justice of the peace authorizing a "nighttime or daytime warrant," does not justify suppression of the evidence. (Defendant's Exhibit 2). Trooper Peckham explained to the justice of the peace that he was unable to check the box, but would do so once he "printed off the documents." (Defendant's Exhibit 1). There was no reply from the justice of the peace before she authorized the warrant and e-mailed it back to the trooper. It is reasonable to infer that the magistrate implicitly approved of the trooper's proposal to mark the box after he printed out the final documents. Moreover, from the entire context of the information in the affidavit, it was obvious that the warrant to obtain a sample of the Defendant's blood was to be executed as promptly as possible that very night. The preferred practice, of course, is for the issuing magistrate to confirm that the appropriate box is marked.

Finally, the court rejects the notion that the Defendant's blood sample was taken from him prior to the issuance of the search warrant. The warrant was not issued until 9:13 p.m. Trooper Peckham then traveled to Lewiston.

8

Officer Tabor from Winthrop, who physically drew the blood sample, did not arrive at the hospital until just prior to 11:00 p.m., and did not perform the blood draw until after he saw the warrant. The inventory submitted by Trooper Peckham states that the warrant was executed at 11:14 p.m. The most logical explanation for the times appearing on the certificates from HETL is that a transposing error or some type of miscommunication occurred regarding the correct time. (Defendant's Exhibits 3 & 4).

## CONCLUSION

The entry is:

Defendant's Motion to Suppress Blood Sample Evidence is DENIED.

Defendant's Motion for Sanctions is DENIED.

Dated: December 18, 2017

William R. Stokes
Justice, Superior Court

9